UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ROBBIN STEWART, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:08-cv-586-LJM-TAB |
| ) | |
| MARION COUNTY, ) | |
| BETH WHITE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Intervening Defendant. ) | |

**Entry Discussing Motions for Summary Judgment**

The citizens of Indiana have an indisputable constitutional right to vote that cannot be blocked by significant obstacles from the State. It is likewise undisputed that the State of Indiana has an important interest in protecting the integrity of its elections from voter fraud. Believing himself to be caught at the crossroads of these two important interests, Robbin Stewart brings[1] this challenge to Indiana's statutory requirement, known as the Voter I.D. Law, which requires that a person appearing at the polls to vote present government-issued photographic identification.[2] Stewart has an acceptable form of photo identification, but objects to presenting it in order to cast his ballot and asserts that requiring him to do so violates his rights. The parties have each moved for summary judgment as to Stewart's claims.

Because the Voter I.D. law is not tainted by any of the infirmities that Stewart attributes to it, the court **grants** the defendants' joint motion for summary judgment (dkt 86) as to the federal claims, **denies** Stewart's motion for partial summary judgment (dkt 80), and **remands** the case to Marion Superior Court for consideration of the pendent claims based on Indiana state law.

---

[1]The case was removed from an Indiana state court by the municipal defendants and the State of Indiana then became an intervening defendant.

[2]The Voter I.D. Law is Public Law 109-2005, codified at various sections of the Indiana Code.

## I. Summary Judgment Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. Rule 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). On cross-motions for summary judgment, the court construes facts and draws inferences "in favor of the party against whom the motion under consideration is made." *Keck Garrett & Associates, Inc. v. Nextel Communications, Inc.*, 517 F.3d 476, 483 (7th Cir. 2008)(quoting *In re United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir. 2006)).

Where "[t]here are no genuine issues of material fact and the dispute primarily concerns a question of interpreting a statute and applying it to a specific set of facts" the dispute is "properly resolved on a motion for summary judgment." *LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.*, 41 F.3d 332, 334 (7th Cir. 1994). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law.").

## II. Background

The facts are simple and undisputed. The Voter I.D. Law requires citizens voting in-person to present election officials with valid photo identification issued by the United States or the State of Indiana. IND. CODE § 3-11-8-25.1. An individual denied the right to vote due to a failure to produce photographic identification can sign an affidavit attesting to the citizen's right to vote in that precinct, in which case the individual may cast a provisional ballot. IND. CODE § 3-11-8-25.1(e). To have the provisional ballot counted, the voter must appear before the circuit court clerk or the county election board by noon on the tenth day following the election. IND. CODE §§ 3-11.7-5-1. At that time, the voter must either provide proof of identification and execute an affidavit that he or she was the person who cast the provisional ballot or file an affidavit attesting to his or her religious objection to being photographed or averring that he or she is indigent and cannot obtain proof of identification without paying a fee. IND. CODE § 3-11.7-5-2.5.

Stewart refused to present photo identification in accordance with the Voter I.D. Law and was therefore not allowed to vote in Marion County in the 2006 and 2008 elections. He cast provisional ballots, but did not follow the steps required to provide identification and these votes were not counted. He had a valid Indiana driver's license in his possession at that time and he has one today. Thus, despite his ability to present his identification and vote, Stewart elected not to do so.

The present challenge to the Voter I.D. Law follows at least two others. First, the law was challenged in *Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775 (S.D. Ind. 2006). In that case, Judge Barker held, among other things, that the law does not violate the First and Fourteenth Amendments to the United States Constitution and is not a poll tax. The Seventh Circuit affirmed in *Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007). The United States Supreme Court agreed. Finding the Voter I.D. Law to be constitutional, the Court explained that, on the basis of the record before it, the stated justifications for requiring photo identification to vote are sufficiently weighty to justify any limitation placed on voters. *Crawford v. Marion County Election Bd.*, 553 U.S. 181 (2008). In addition, the Voter I.D. Law has been challenged in the Indiana state courts. In *League of Women Voters of Indiana, Inc. v. Rokita*, the Indiana Court of Appeals held that the law violates Article I, § 23 of the Indiana Constitution. 915 N.E.2d 151 (Ind. Ct. App. 2009). The Indiana Supreme Court granted transfer on January 25, 2010, but has not yet issued a published decision. Because the claims are different here, these prior decisions do not entirely control the outcome of this case. This explains why adjudication of Stewart's claims has proceeded and is now concluded, despite the pending transfer of *League of Women Voters* to the Indiana Supreme Court.

### III. Discussion

Stewart attacks the Voter I.D. law on a number of grounds. He argues that the law violates a number of federal constitutional provisions, the Privacy Act of 1974, and a number of state constitutional provisions.

### A.  Stewart is Limited to His Facts

As an initial matter, the court must address Stewart's insistence on raising facts and argument not related to his claims. Stewart bases much of his argument on the contention that others may find it very difficult or impossible to obtain a photo identification. These arguments do not apply to Stewart, who has a driver's license. This court has already held that he will be limited to his own facts and cannot bring any claims on behalf of others. (Order on Plaintiff's Motion for Temporary Injunctive Relief, dkt 34). Because Stewart lacks standing to vindicate the rights of others, the court will not consider whether the Voter I.D. Law may infringe the rights of others, but will stick to the facts associated with Stewart's own voting history.

**B. Federal Constitutional Claims**[3]

Stewart argues that the Voter I.D. Law violates a number of federal constitutional provisions, including the Twenty-Fourth Amendment, the Fourth Amendment, and the First and Fourteenth Amendments. The court addresses each in turn.

1.  *Twenty Fourth Amendment*

The Twenty-Fourth Amendment prohibits the charging of a tax in order to vote. Stewart argues that the Voter I.D. Law violates the Twenty-Fourth Amendment.

The Seventh Circuit has already noted that the Voter I.D. Law is not a poll tax. *See Crawford v. Marion County Election Bd.*, 472 F.3d 949, 952 (7th Cir. 2007). That court explained: "The Indiana law is not like a poll tax, where on one side is the right to vote and on the other side the state's interest in defraying the cost of elections or in limiting the franchise to people who really care about voting or in excluding poor people or in discouraging people who are black. The purpose of the Indiana law is to reduce voting fraud, and voting fraud impairs the right of legitimate voters to vote by diluting their votes-dilution being recognized to be an impairment of the right to vote." *Id.* (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Siegel v. LePore*, 234 F.3d 1163, 1199 (11th Cir. 2000)).

Stewart's comparison to the statute invalidated in *Harman v. Forsennius*, 380 U.S. 528 (1965), is unavailing. In that case, the Commonwealth of Virginia had required those wishing to vote to either pay a fee or submit a yearly certificate of residency. The Supreme Court held that citizens have an absolute right not to pay a poll tax and must not be forced to choose between waiving that right and filing a certificate of residency. *Id.* at 542 ("Any material requirement imposed upon the federal voter solely because of his refusal to waive the constitutional immunity subverts the effectiveness of the Twenty-fourth Amendment and must fall under its ban."). Stewart's right to be free of a poll tax is not implicated here. He is merely required to present photo identification, a document he already has. To the extent that Stewart bases his argument on alleged costs in obtaining photo identification, that argument must fail. Stewart already has a driver's license, which is a valid form of photo identification. Therefore, he has not been required to incur any extra costs to obtain a valid photo identification to present when voting and does not have standing to challenge any alleged fees which might be incurred by a person not similarly equipped with photo identification. Accordingly, Stewart's challenge to the Voter I.D. Law based on the Twenty-Fourth Amendment's proscription against a poll tax fails.

---

[3] Stewart's reference to the Fifteenth Amendment in his complaint is not addressed by any party, including Stewart himself, in the summary judgment materials. The court deems this claim to have been abandoned. In any event, however, a claim based on the Fifteenth Amendment in this case would be so spurious as to not warrant discussion. The same is true as to any other claim arguably presented by Stewart but not specifically discussed in this Entry.

2. *Fourth Amendment*

Stewart also asserts that requiring him to present identification at the voting booth amounts to a search in violation of the Fourth Amendment. The Fourth Amendment protects the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United s v. Brock*, 417 F.3d 692, 696 (7th Cir. 2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

The Fourth Amendment is not violated when authorities approach a person in an airport and ask routine questions, including those related to identification. *United States v. Rodriguez*, 69 F.3d 136, 141-42 (7th Cir. 1995) (citing *United States v. Johnson*, 910 F.2d 1506, 1509 (7th Cir. 1990); *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990)). As long as a person feels free to leave, his Fourth Amendment rights are not affected. This is what happened here. Stewart was asked for photo identification when he tried to vote. He refused to present it. He was then free to cast a provisional ballot and leave, or to leave without having cast a provisional ballot. He had a choice – he could either present his identification and vote or refuse to present identification and leave. The encounter was consensual and had no impact on his Fourth Amendment rights. Requiring Stewart to present identification at the polls does not amount to a search.

Even if requiring identification at the polls does constitute a search, it still does not violate the Fourth Amendment. The Supreme Court has suggested that stopping drivers in a uniform manner for the purpose of verifying drivers' licenses and vehicle registrations would be permissible. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). In *Prouse*, the Court invalidated a discretionary, suspicionless stop for a spot check of a motorist's driver's license and vehicle registration. The Court nonetheless acknowledged the states have an important interest in ensuring that only those qualified to do so are permitted to operate motor vehicles and that these vehicles are fit for safe operation. *Id.* at 658. The Court therefore suggested that the "[q]uestioning of all oncoming traffic at roadblock-type stops" would be a lawful means of serving this interest in highway safety. *Id.* Similarly, in this case, the State of Indiana has an important interest in preventing voter fraud. Asking every voter who appears at the polls for identification in a consistent manner is a lawful means of serving this interest. Therefore, Stewart's challenge to the Voter I.D. Law based on the Fourth Amendment's proscription against unreasonable searches fails.

3. *First and Fourteenth Amendments*

Stewart also argues that the Voter I.D. Law violates his rights under the First and Fourteenth Amendments. The First and Fourteenth Amendments to the United States Constitution protect individual citizens' rights. *See Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 821 (S.D. Ind. 2006) (citing *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217 (1986)). These amendments thus temper a state's authority to regulate elections. "A court considering a challenge to a state election law must weigh 'the character

and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428 434 (1992)).

Stewart's challenges based on the First and Fourteenth Amendments are foreclosed by persuasive and binding authority.

- ! With respect to the First Amendment claim, Judge Barker concluded in *Indiana Democratic Party*, that the Voter I.D. Law did not violate the First Amendment and the Seventh Circuit agreed with that ruling. *Crawford v. Marion County Election Bd.*, 472 F.3d 949, 954 (7th Cir. 2007). Stewart has provided this court with no evidence or reason showing that it should or that it reasonably could reach a contrary conclusion.

- ! With respect to the Fourteenth Amendment, on the basis of the record before it, the Supreme Court in *Crawford* held that it could not find that the law imposes "'excessively burdensome requirements'" on any class of voters. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 202 (2008). The record in this case fares no better. Stewart, who possesses a valid photo identification and the ability to present it, has identified no burden on his right to vote, much less an excessive burden that is not justified by the stated desire to prevent voter fraud.

Accordingly, his claims based on the First and Fourteenth Amendments to the Constitution fail.

## C.  Privacy Act

Stewart also alleges in his complaint that the Voter I.D. Law violates the Privacy Act of 1974, 5 U.S.C. § 552a. He asserts that requiring a voter whose Social Security number is on his or her driver's license to present that driver's license at the polls violates this statute. Stewart, however, is not such a voter; his Social Security number is not on his driver's license. This claim fails.

## D.  State Claims

The foregoing discussion resolves each of Stewart's federal claims. As noted, however, Stewart also asserts claims under Indiana state law. When a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims pursuant to 28 U.S.C. § 1367(a), or to dismiss them pursuant to 28 U.S.C. § 1367(c)(3). *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998); *Wright v. Associated Insurance Cos., Inc.,* 29 F.3d 1244, 1250 (7th Cir. 1994). "[I]n the usual case in which all

federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). Of course where an action has been removed to federal court, the "dismissal" of supplemental claims takes the form of a remand to the state court from which the case had been removed.

"[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)). Having considered these factors here, the general rule will be followed. Applying the general rule dictates that the court not exercise supplemental jurisdiction over Stewart's pendent state law claims.[4]

### IV. Conclusion

For the foregoing reasons, the joint motion for summary judgment filed by defendants Marion County and Beth White and intervening defendant the State of Indiana (dkt 86) is **granted** as to Stewart's federal claims and Stewart's motion for summary judgment (dkt 80) is **denied**. The court will not exercise supplemental jurisdiction to resolve pendent claims under Indiana state law. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 04/16/2010

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

---

[4] Stewart concludes, based on the ruling of the Indiana Court of Appeals in *League of Women Voters*, that this court must hold the law unconstitutional in this case. To adopt this view, however, Stewart's challenge would be unnecessary. While it is undoubtedly true that federal courts must abide by a state court's interpretation of state law, this argument suffers from an important flaw. In this lawsuit, Stewart did not challenge the law under Article 1, § 23, and the court denied his motion to amend the complaint to add the claim considered in *League of Women Voters*. Accordingly, *League of Women Voters* does not control to the claims raised here.